## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                         Plaintiff,

      -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                        Defendant

------------------------------------------------------------x

Civ. No.: 14 cv 5655
(MKB)(RML)

### DECLARATION OF NOEL P. TRIPP
### IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
### FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED
### NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

Noel P. Tripp, an attorney duly admitted to practice before the United States District

Court for the Eastern District of New York, does hereby declare as follows:

1.    I am a Shareholder with the law firm of Jackson Lewis P.C., counsel for

Defendant World Journal, LLC ("Defendant"). I submit this Declaration in support of

Defendant's Opposition to Plaintiff's Motion for Conditional Certification and Court-

Authorized Notice pursuant to § 216(b) of the FLSA.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Rose

Hsiung, dated April 2, 2015, with Exhibit A thereto.

3.    Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of

James Gao, dated March 13, 2015.

4.    Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of

Michelle Liao, dated March 13, 2015.

5.      Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Richard C. Liang, dated March 13, 2015.

6.      Attached hereto as Exhibit 5 is a true and correct copy of the Declaration of Shu-Mei Chung, dated March 13, 2015.

7.      Attached hereto as Exhibit 6 is a true and correct copy of the Declaration of Ying Sum Lau, dated March 13, 2015.

8.      Attached hereto as Exhibit 7 is a true and correct copy of the Declaration of Nathan Zheng, dated March 27, 2015.

9.      Attached hereto as Exhibit 8 is a true and correct copy of the Declaration of Lilian Yang, dated March 27, 2015.

10.     Attached hereto as Exhibit 9 is a true and correct copy of the Declaration of Mi Wu, dated March 27, 2015.

11.     Attached hereto as Exhibit 10 is a true and correct copy of the Declaration of Monique Lin, dated March 27, 2015.

12.     Attached hereto as Exhibit 11 is a true and correct copy of the Declaration of Sandra Lee, dated March 27, 2015.

Dated: Melville, New York
       April 2, 2015

                                        JACKSON LEWIS P.C.
                                        *ATTORNEYS FOR DEFENDANT*
                                        58 South Service Rd., Ste. 250
                                        Melville, New York  11747
                                        (631) 247-0404

                        By:     _____
                                NOEL P. TRIPP, ESQ.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

        Plaintiff,

   -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

        Defendant

------------------------------------------------------------x

Civ. No.: 14 cv 5655
(MKB)(RML)

## DECLARATION OF ROSE HSIUNG

1. This Declaration is based upon my own personal knowledge of the facts.

2. I am employed by World Journal, LLC (the "World Journal") as Director of the Account Services Department. I have held this position since March 1st, 2014. World Journal's Account Executives report to me. Previously I worked as Director of the Event and Project Service Department.

*About World Journal*

3. World Journal is the largest Chinese-language newspaper in the United States.

*Role of Account Executives*

4. Account Executives are responsible for selling advertising, which constitutes approximately half of the World Journal's revenue (the balance of the revenue coming from subscription sales, classified advertising and certain web site advertising separate from that sold by Account Executives).

5. Account Executives are expected to renew the contracts of existing advertisers, and also enter into new contracts both with those existing advertisers and new customers, meaning any business that might seek to advertise to a Chinese readership. No other position at the World Journal handles these sales, or is responsible from obtaining these commitments from advertisers. Account Executives are the only employees handling the sales function for World Journal.

6. Contracts can range in length from one day to one year. An example of the former would be a special run by a retail business in anticipation of a sale or other promotion at their store. An example of the latter type of contract would be a doctor or lawyer or other professional services provider seeking continuity in the community, who runs the same ad in the same spot for an extended period of time to ensure the community is aware of his or her services.

7. Account Executives are paid on commission. Account Executives are members of a union, which negotiates the commission rates paid to Account Executives for selling different types of ads. The commission rates applicable to Account Executive sales are set forth in the collective bargaining agreement between World Journal and the Plaintiff's union. The relevant excerpt is attached to this Declaration as Exhibit A.

8. World Journal's Account Executives are well-compensated, with annual total compensation reaching more than $260,000 for the top performers. In 2014, eleven of the twenty-five Account Executives who worked during that year made more than $100,000. Another six made more than $70,000. The average total compensation (even without accounting for the fact that Plaintiff Lin only worked half of the year) was $112,736.46.

9. World Journal currently has twenty-four Account Executives.

*Former Account Executive Chia-Hao Lin*

10. Plaintiff Lin, like other Account Executives, was paid via commission and was very well paid.

11. His annual total compensation from the World Journal for the last four years was as follows: $93,316.18 (2011), $103,347.32 (2012), $86,736.91 (2013), and $52,531.78 (through separation in July 2014).

*Former World Journal Employee Eshin Nee*

12. Eshin Nee was the Manager of the Account Executives for a very brief period. Account Executives were managed by Richard Li from April 1st, 2008 until June 30, 2013. They were then managed by Ms. Nee between July 1, 2013 and February 28, 2014 until she resigned because she felt her performance in that role was inadequate. I became the manager of the Account Executives on or about March 1, 2014.

13. Ms. Nee worked for the World Journal for a long time, as she notes in her Declaration submitted in this case. She was angry at the time of her resignation.

*Former World Journal Employees Yun Fang Teng and Ming Hong Han*

14. Yun Fang Teng, a former assistant director of accounting at the World Journal, separated from employment as part of a group layoff on or about June 1, 2014. Ming Hong Han, a former Director in World Journal's Event and Project Service Department, resigned on or about August 31, 2013.

15. As set forth in their Declarations, these two individuals also were long term employees. They were both unhappy with World Journal when they left their employment. When they were employed, they had no involvement in the advertising department, and no responsibilities relating to the Account Executives.

3

*Retail Advertising Sales*

16. The World Journal's advertising are considered retail in the industry because it sells advertising space to the end-user—the customer. Customers do not purchase bulk advertising space from World Journal which is then resold to others; whenever an ad is purchased and placed, it corresponds directly to the end client, *i.e.*, the advertiser.

17. I declare under the penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

This 2nd day of April, 2015

Rose Hsiung
_____
Rose Hsiung

4

# EXHIBIT A

## ARTICLE XVII

## COMPENSATION

1.  **Introductory Stipend** – All newly hired employees of the Employer who are hired on or after the effective date of this Agreement shall receive a stipend of $1,000.00 per month for the first three (3) months of employment with Employer.

2.  **Bonus -** All employees who have been employed for at least six (6) months as of December 31, 2002 shall receive a bonus on or before February 28, 2003. Thereafter, employees shall not be eligible to receive an annual bonus in any future year regardless of hire date. The amount of the bonus shall be determined by the Employer.

3.  **Regular Accounts** – Employees shall be paid a commission of 10% on the total amount of collected advertisement sales generated from their regular accounts. Regular accounts shall be defined as accounts which are serviced by the employee. Regular accounts shall not include call-in/walk-in accounts or grandfathered accounts. Regular accounts shall not be shared or transferred between two or more employees without the written consent of the Employer.

4.  **Call-in/Walk-in Accounts** –

    A.  Definition:  Call-in/walk-in accounts shall be defined as accounts which make the initial request to advertise in the Employer's paper without being solicited by an employee. Call-in/walk-in accounts shall be assigned to employees within the discretion of the Employer. Call-in/walk-in accounts shall not be shared or transferred between two or more employees without the written consent of the Employer.

    B.  Commission: For the first twelve (12) months in which the account advertises in the Employer's paper, the employee assigned to service the account shall be paid a

commission of 5% on the total amount of collected advertisement sales generated from the call-in/walk-in account. For call-in/walk-in accounts which advertise with the Employer more than twelve (12) cumulative months, the employee assigned to service the account shall be paid a commission of 10% on the total amount of collected advertisement sales generated after the first twelve (12) cumulative months from the call-in/walk-in account.

5.      **Grandfathered Accounts** – Grandfathered accounts are accounts which were originally Employer "house accounts," but which were taken over and are being serviced by employees. Employees shall be paid a commission of 5% on the total amount of collected advertisement sales generated from their grandfathered accounts. Grandfathered accounts shall not be shared or transferred between two or more employees without the written consent of the Employer.

6.      **Special Projects** – Employees who sell advertisements for the Employer's special projects including, but not limited to, the Annual Family Diary, the Employer's website, special magazines and special supplements shall be paid at a commission rate of 15% on the total amount of collected advertisement sales generated for each special project. The Employer has the exclusive right and maximum discretion to create, resume or discontinue a special project, and at any time to increase or decrease the commission rate paid on the sale of advertisements for any special project. However, the Employer agrees to give the Union courtesy notice in advance of discontinuance of a special project or a change in the commission rate.

7.      **Sales Goals** –

A.      Departmental Goal:    On or before December 31st, the Employer shall set an annual departmental sales goal for the Advertisement Sales Department for the next fiscal

year (December through November): (i) which shall be not less than a 6% increase, and not more than an 18% increase of the sales baseline (as defined in Exhibit "C"); and, (ii) the employees' individual annual sales goals which, when aggregated, shall equal the departmental sales goal. The formula used by the Employer to determine the department sales goal is defined in Exhibit "C". The initial determination of the individual annual sales goals shall be within the discretion of the Employer.

B.     Employee Review:     Employees shall have the right to propose revised individual annual sales goals to the Employer by or before January 15th of the Employer's fiscal year. However, the aggregated total of the employees' revised individual annual sales goals must equal the departmental annual sales goal discussed in Paragraph 1 above. The Employer shall have no obligation to review any revised individual annual sales goals submitted after January 15th. In addition, the Employer is not required to accept any employee proposed individual annual sales goals. Final employee individual annual sales goals shall be set by the Employer on or before January 31st of the Employer's fiscal year.

8.     **Incentive Pay** -

A.     Definitions:

1.     Annual Sales Production: For purposes of this Article, "annual sales production" shall mean the monetary value of the total amount of advertisement sold by an employee which actually appeared in one of Employer's publications during a particular fiscal year.

2.     Actual Receivable Rate: For purposes of this Article, the "actual receivable rate" shall be calculated by dividing the employee's total amount of uncollected sales

for the fiscal year by the employee's total annual sales production for the fiscal year. Said number (quotient) will be multiplied by 100, and then subtracted from 100 to determine the actual receivable rate. In determining an employee's receivable rate, the Employer shall include all payments received before March 1st of the following fiscal year for sales made by the employee during the previous fiscal year.

> Example: Employee's sales production for Employer's fiscal year December 2002-November 2003 was $800,000, and his/her actual receivables were $790,000. The total amount of uncollected sales was $10,000. Therefore, his/her actual receivable rate is 98.75. ($10,000 ÷ $800,000 = .0125 x 100 = 1.25; 100 − 1.25 = 98.75).

B.  <u>Monthly Incentive Pay</u>: Employees shall receive monthly incentive pay based on the following schedule:

| If the employee's total annual sales production for the fiscal year falls between: | The employee will receive the corresponding monthly payment on the 15th of each month: |
| --- | --- |
| $1 - $300,000 | $400 |
| $300,001 - $600,000 | $600 |
| $600,001 - $1,000,000 | $800 |
| More than $1,000,000 | $1,000 |

The above schedule is not cumulative. Employees meeting the above criteria shall be eligible to receive monthly incentive pay under only one of the above levels.

1.  Beginning in January 2003 and continuing through March 2004, all employees shall receive the above-referenced monthly incentive pay based on their sales production during the fiscal year December 2001-November 2002.

Example:    Employee's sales production for Employer's fiscal year December 2001-November 2002 was $800,000. Regardless of whether his/her sales goal was reached for the fiscal year December 2001-November 2002, the employee will receive monthly incentive pay of $800 per month from January 2003 through March 2004.

2.    For all subsequent years of this Agreement, an employee shall be eligible for monthly incentive pay, in accordance with the above schedule, only if all three of the following criteria are met:

(i)    The employee's total annual sales production for the fiscal year (December-November) exceeds the employee's total annual sales production of the previous fiscal year.

(ii)    The employee's total annual sales production for the fiscal year is at least 90% of the employee's individual sales goal for the same fiscal year.

(iii)    The employee has an actual receivable rate of 98% or higher during the fiscal year.

The monthly incentive earned for the particular fiscal year shall be paid beginning in April of the next fiscal year and run through March of the following fiscal year.

C.    Annual Incentive Bonus: Employees who meet or exceed their final annual sales goal and have an actual receivable rate of 98% or higher for a particular fiscal year shall receive an annual incentive bonus for that fiscal year in the form of a lump sum payment, according to the following schedule:

| If the employee's total annual sales production for the fiscal year falls between: | The employee is entitled to a lump sum payment for that fiscal year of: |
|---|---|
| $1 - $300,000 | 1% of his/her total sales for the fiscal year |
| $300,001 - $600,000 | $3,000 plus 1.5% of his/her sales over $300,000 in the given fiscal year |
| $600,001 - $1,000,000 | $7,500 plus 2% of his/her sales over $600,000 in the given fiscal year |
| More than $1,000,000 | $15,500 plus 2.5% of his/her sales over $1,000,000 in the given fiscal year |

The above schedule is not cumulative. Employees meeting the above criteria shall be eligible to receive an annual incentive bonus under only one of the above levels.

      9.    **Determinations and Payments** - The Employer will calculate and determine whether an employee is eligible to receive monthly incentive pay and/or an annual incentive bonus for each fiscal year during March of the following fiscal year. Employees who are eligible to receive an *annual* incentive bonus for their previous year's production will receive the appropriate lump sum payment on or before April 30th . Employees who are eligible to receive *monthly* incentive pay for their previous year's production will receive the appropriate monthly payment once a month beginning in April and running through the following March

                    <u>Example #1</u>:  Employee's sales information for the fiscal year December 2003-November 2004 is as follows:

                            Sales Goal -          $850,000

                            Sales Production -     $900,000

                            Actual Receivable Rate -  99%

Sales Production For The Fiscal Year December 2002 - November 2003 -                    $890,000

Employee is entitled to receive monthly incentive pay because: (i) his sales production during the fiscal year December 2003-November 2004 ($900,000) exceeded his sales production from the fiscal year December 2002 -November 2003 ($890,000), and; his total annual sales production for the fiscal year 2003-2004 was at least 90% of his sales goal for that year ($900,000 is 105.8% of $850,000), and; his actual receivable rate (99%) was 98% or higher. Therefore, Employee will receive $800/month for twelve (12) consecutive months, beginning in April 2005 and ending in March 2006.

In addition, Employee will receive an annual incentive bonus in April 2005 because: (i) he met or exceeded his sales goal for the fiscal year 2003-2004, and; his actual receivable rate (99%) was 98% or higher. Therefore, on or before April 30, 2005, Employee will receive an annual incentive bonus in a lump sum payment of $13,500 (2% of sales over $600,000 = $300,000 x 2% = $6,000 + $7,500 = $13,500).

Example #2:  Employee's sales information for the fiscal year December 2003-November 2004 are as follows:

Sales Goal -                         $950,000

Sales Production -              $900,000

Actual Receivable Rate –  99%

Sales Production For The Fiscal Year December 2002 - November 2003 -                    $890,000

Employee is entitled to receive monthly incentive pay because: (i) his sales production during the fiscal year 2003 - 2004 ($900,000) exceeded his sales production from the fiscal year 2002 - 2003 ($890,000), and; his total annual sales production for the fiscal year 2003-2004 was at least 90% of his sales goal for that year ($900,000 is 94.7% of $950,000), and; his actual receivable rate (99%) was 98% or higher. Therefore, Employee will receive $800/month for twelve (12)

consecutive months, beginning in April 2005 and ending in March 2006. Employee is not entitled to an annual incentive bonus because his fiscal year 2003 - 2004 sales production ($900,000) did not meet of exceed his sales goal for that period ($950,000).

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                          Plaintiff,

       -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                         Defendant

------------------------------------------------------------X

Civ. No.: 14 cv 5655
(MKB)(RML)

## DECLARATION OF JAMES GAO

1.    I, James Gao, am competent to testify to the matters contained in this Declaration.  This Declaration is based upon my personal knowledge and is under oath.

2.    I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.    I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.    The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct.  I should not, and am not, speculating or making statements based upon rumor.  I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else.  I was asked to just state the truth.

5.    I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.    I have not been coerced or pressured in any way to sign this document.  I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7.    I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8.    Since 1992, I have been employed by the World Journal as an Account Executive and Business Reporter.   Previously, we were referred to as Account Executive/Consumer News Reporter.  About ten years ago, the change was made to Business Reporter to help us make more sales.

9.    I have always worked out of our Chinatown office, but I have clients all over New York and outside, including in California.

10.   My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers.  A customer is any business that advertises in the World Journal.  Types of advertisements for sale include display ads, advertorials, and pre-print inserts.  We also have digital media channels such as the online edition or social media.

11.   My performance is evaluated based on advertising purchased by my clients, new and existing.  It is my job to sell advertising and collect funds.

12.   My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications.   With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services.   I try to encourage them to expand their advertising with us to new channels.  I assist them with creation of their advertisements propose new or modified advertising and respond to their questions.  All

2

of this activity is done to drive sales, meaning to retain their business by having them continue to order advertising services, and if possible expand it.

13.   With respect to new clients, I explain to them the benefits of advertising with World Journal and attempt to get them to purchase those services.

14.   To maximize sales, I work outside the office to meet with existing or prospective clients, and to search for new clients to sell advertising space for one of the Company's publications.  I also visit clients to keep in regular contact to maintain good business relationships and to ensure satisfaction with the advertising products offered by the Company.

15.   When I meet with or talk to existing or prospective clients, I discuss and identify their advertising needs with them.  Based on those needs, I recommend different advertising strategies, campaigns, and budgets to the clients, and allow them the opportunity to provide me with any feedback regarding my recommendations.  If the clients are interested in any of the Company's products, I assist in helping make a final product decision and suggest next steps.

16.   During an average week, I am out in the field almost every day, whether to network and develop new clients, meet with an existing client regarding their advertising or collect payment.  I treat all of these calls as opportunities to retain and develop business.  In the last ten years, with the expansion of Internet advertising, the marketplace is very competitive and we work hard to develop and retain business.  Much of my time in the office is spent researching or preparing materials which relate to these sales efforts, and also responding to inquiries and dealing with client issues.  We also handle some client billing issues not handled by the accounting department.

3

17. Even when I am not meeting with clients in-person, I am responsible for developing and maintaining strong relationships with existing clients. For that reason, I regularly email or call existing clients to measure satisfaction with the Company's product, to confirm that the Company's product matches their needs, to identify what, if anything, the Company can do to deliver a product that meets those needs and to schedule meetings.

18. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal offices in Whitestone and Chinatown. During the last couple of years, I have not recorded the beginning of the day in this fashion.

19. As an Account Executive, I am paid through commissions as set forth in my union contract.

20. When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

21. The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

22. The interview took about 30 minutes.

23. During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

24. I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

茲證明上述聲明已為我從英語翻譯成普通話,我的母語, 而本宣言所載的資料是真實和準確的。

This 13th day of March, 2015

_____
James Gao

5

## TRANSLATOR DECLARATION

I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for James Gao from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 13, 2015

_____
Signature

_Arthur Kwok_
Printed name

_____
Address

_____
City, State, Zip Code

_____
Telephone number

4825-0600-9122, v. 2

6

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff*
*and Class members,*

                                        Plaintiff,          Civ. No.:  14 cv 5655
                                                            (MKB)(RML)
            -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                                        Defendant

--------------------------------------------------------------X

### DECLARATION OF MICHELLE LIAO

1. I, Michelle Liao, am competent to testify to the matters contained in this Declaration. This Declaration is based upon my personal knowledge and is under oath.

2. I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3. I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4. The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct.  I should not, and am not, speculating or making statements based upon rumor.  I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else.  I was asked to just state the truth.

5. I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6. I have not been coerced or pressured in any way to sign this document.  I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7.  I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8.  Since 2006, I have been employed by the World Journal. For one year, I worked as a bookkeeper. In 2007, I was recommended for a position as an Account Executive. I had previously worked in retail sales (jewelry business).

9.  I work out of the Whitestone office. I report to that office in the morning. I typically spend my morning drafting advertorials, working with clients, and making phone calls to current and potential clients. Each afternoon, I go out into the field to meet with current and potential clients, to develop business and also handle collections. We try to cultivate relationships both with local businesses, who advertise directly, and with ad agencies who handle media buying for their clients and may be interested in advertising in a Chinese-language publication. My field work can be anywhere, but typically I am in Queens, Manhattan, Brooklyn or New Jersey. Approximately half of my time is spent in the field on these sales efforts.

10. My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers. A customer is any business that advertises in the World Journal. Types of advertisements for sale include display ads, advertorials, and pre-print inserts. We also have digital media channels such as the online edition or social media. My performance is evaluated based on advertising purchased by my clients, new and existing. It is my job to sell advertising and collect funds.

11. My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With

2

respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to expand their advertising with us, and I assist them with creation of their advertisements, propose new or modified advertising and respond to their questions. Everything an Account Executive does is done to drive sales, meaning to retain and grow business or obtain new business.

12. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone. I will communicate with my manager, Rose Hsiung, if I am going to deviate from my usual schedule or not clock in or out. However, I do not otherwise communicate with her every day, only when there is an issue requiring action or advice from her. I am free to perform my job as an outside sales employee as I choose.

13. As an Account Executive, I am paid through commissions as set forth in my union contract.

14. When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

15. The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

16. The interview took about 20 minutes.

17. During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

18. I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

3

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

茲證明上述聲明已為我從英語翻譯成普通話,我的母語, 而本宣言所載的資料是真實和準確的。

This 13th day of March, 2015

Michelle Liao

4

## TRANSLATOR DECLARATION

I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Michelle Liao from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.


Date:   March 13, 2015

_____
Signature

_____
Printed name


4825-0600-9122, v. 2

5

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff*
*and Class members,*

                                        Plaintiff,          Civ. No.:  14 cv 5655
                                                            (MKB)(RML)
                -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                                        Defendant

------------------------------------------------------------X

## DECLARATION OF RICHARD C. LIANG

1.      I, Richard C. Liang, am competent to testify to the matters contained in this Declaration. This Declaration is based upon my personal knowledge and is under oath.

2.      I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.      I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.      The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct.  I should not, and am not, speculating or making statements based upon rumor.  I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else.  I was asked to just state the truth.

5.      I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.      I have not been coerced or pressured in any way to sign this document.  I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7.   I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8.   Since 2004, I have been employed by the World Journal.  For two years, I was a journalist covering various subjects, including the criminal court in Kew Gardens.  In 2006, I requested and received a transfer to the Account Executive position, because it is a sales position which would allow me to make more money.

9.   I work out of the Whitestone office.  I report to that office in the morning, but I spend at least half my time in the field meeting with new and existing clients.  I will simply walk around on Main Street in Flushing, visiting with current or potential clients to discuss their business and how we can best provide service to them.  I will deliver copies of the World Journal to clients and prospects.  I consider everybody I speak to a potential client. For example, I will speak to Assistant District Attorneys in Queens whom I know from my days as a reporter, and remind them that if they go into private practice they should advertise with World Journal through me.  I do a lot of my field work in Queens, every day, but I regularly travel to other boroughs or to New Jersey to meet with prospects.

10.  In the field, I also meet with an existing clients to collect payment.  I treat all of these calls as opportunities to retain and develop business.

11.  My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers.  A customer is any business that advertises in the World Journal.  Types of advertisements for sale include display ads, advertorials, and pre-print inserts.  We also have digital media channels such as the online edition or social media.

12.  My performance is evaluated based on advertising purchased by my clients, new and existing. It is my job to sell advertising and collect funds.

13.  My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to expand their advertising with us, and I assist them with creation of their advertisements, propose new or modified advertising and respond to their questions. Everything an Account Executive does is done to drive sales, meaning to retain and grow business or obtain new business.

14.  As noted above, to maximize sales, I work outside the office to meet with existing or prospective clients, and to search for new clients to sell advertising space for one of the Company's publications. I also visit clients to keep in regular contact to maintain good business relationships and to ensure satisfaction with the advertising products offered by the Company.

15.  During an average week, I am in the office about half the time. There, I perform tasks related to that sales activity including communicating with clients and working on their ads (both the text and artwork).

16.  During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone.

17.  As an Account Executive, I am paid through commissions as set forth in my union contract. I am free to perform my job as an outside sales employee as I choose.

3

18.   When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

19.   The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

20.   The interview took about 20 minutes.

21.   During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

22.   I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

茲證明上述聲明已為我從英語翻譯成普通話,我的母語，而本宣言所載的資料是真實和準確的。

This 13th day of March, 2015

Richard C. Liang
_____
Richard C. Liang

4

## TRANSLATOR DECLARATION

I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Richard C. Liang from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 13, 2015

Signature

Printed name

4825-0600-9122, v. 2

5

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                               Plaintiff,

        -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                         Defendant

-------------------------------------------------------------X

Civ. No.: 14 cv 5655
(MKB)(RML)

### DECLARATION OF SHU-MEI CHUNG

1.    I, Shu-Mei Chung, am competent to testify to the matters contained in this Declaration. This Declaration is based upon my personal knowledge and is under oath.

2.    I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.    I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.    The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct. I should not, and am not, speculating or making statements based upon rumor. I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else. I was asked to just state the truth.

5.    I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.    I have not been coerced or pressured in any way to sign this document. I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7.   I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8.   Since 1992, I have been employed by the World Journal as an Account Executive.

9.   I work out of the Whitestone office. I report to that office in the morning. I typically spend part of my day there, working on client materials such as advertisements and articles, and making phone calls to current and potential clients, but every day is different.

10.  Almost every day, I go out into the field to meet with current and potential clients, to develop business and also handle collections. While I am in the field, I meet with and look for businesses that may be interested in advertising in a Chinese-language publication. I always encourage current clients and friends to refer those types of businesses to me. There has been a lot of turnover in the client base in the last ten years because the Internet advertising platform has increased the competition. My field work can be anywhere, but typically I go to areas in Queens, Manhattan's Chinatown or New Jersey.

11.  My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers. Types of advertisements for sale include display ads, advertorials, and pre-print inserts. We also have digital media channels such as the online edition or social media. It is my job to sell advertising and collect funds.

12.  My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to

2

expand their advertising with us, and I assist them with creation of their advertisements; propose new or modified advertising and respond to their questions. Everything an Account Executive does is done to drive sales, meaning to retain and grow business or obtain new business.

13. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone.

14. I communicate with my manager, Rose Hsiung, only a couple of times a week, usually if there is a problem or I need to consult with her. I am free to perform my job as an outside sales employee as I choose.

15. As an Account Executive, I am paid through commissions as set forth in my union contract.

16. When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

17. The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

18. The interview took about 20 minutes.

19. During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

20. I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

3

茲證明上述聲明已為我從英語翻譯成普通話,我的母語，而本宣言所載的資料是真實和準確的。

This 13th day of March, 2015

Shu-Mei Chung

4

## TRANSLATOR DECLARATION

       I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Shu-Mei Chung from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

       I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 13, 2015

_____
Signature

_____
Printed name

4825-0600-9122, v. 2

5

# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                       Plaintiff,

      -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                    Defendant

Civ. No.:  14 cv 5655
(MKB)(RML)

-------------------------------------------------------------X

## DECLARATION OF YING SUM LAU

1.    I, Ying Sum Lau, am competent to testify to the matters contained in this Declaration. This Declaration is based upon my personal knowledge and is under oath.

2.    I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.    I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.    The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct. I should not, and am not, speculating or making statements based upon rumor. I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else. I was asked to just state the truth.

5.    I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.    I have not been coerced or pressured in any way to sign this document. I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7.    I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8.    Since 1988 or 1989, I have been employed by the World Journal as an Account Executive and Reporter. Prior to coming to work for World Journal as a sales employee, I was employed in sales for another Chinese language newspaper in New York. Before that, I was a salesman in Hong Kong in different industries.

9.    I worked out of our Chinatown office for many years, but I have clients all over New York. I now work out of our Brooklyn office. I spend about half my time in the office, and half in the field meeting with new and existing clients.

10.   My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers. A customer is any business that advertises in the World Journal. Types of advertisements for sale include display ads, advertorials, and pre-print inserts. We also have digital media channels such as the online edition or social media.

11.   My performance is evaluated based on advertising purchased by my clients, new and existing. It is my job to sell advertising and collect funds.

12.   My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to expand their advertising with us to new channels. I assist them with creation of their advertisements propose new or modified advertising and respond to their questions. I

2

may translate their advertisements from English into Chinese. All of this activity is done to drive sales, meaning to retain their business by having them continue to order advertising services, and if possible expand it.

13. With respect to new clients, I explain to them the benefits of advertising with World Journal and attempt to get them to purchase those services.

14. To maximize sales, I work outside the office to meet with existing or prospective clients, and to search for new clients to sell advertising space for one of the Company's publications. I also visit clients to keep in regular contact to maintain good business relationships and to ensure satisfaction with the advertising products offered by the Company.

15. When I meet with or talk to existing or prospective clients, I discuss and identify their advertising needs with them. Based on those needs, I recommend different advertising strategies, campaigns, and budgets to the clients, and allow them the opportunity to provide me with any feedback regarding my recommendations.

16. During an average week, I am in the office half the time and in the field half the time. In the field, I network and develop new clients, meet with an existing clients regarding their advertising needs or collect payment. I treat all of these calls as opportunities to retain and develop business. In the office, I perform tasks related to that sales activity including communicating with clients and working on their ads (both the text and artwork).

17. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Chinatown. I do not do this in the Brooklyn office because I am responsible for opening it at 9 AM and closing it at 6 PM.

3

18.  My manager is Rose Hsiung.  However, unless there is a specific issue that requires discussion, I do not communicate with her on a regular basis.  I am free to perform my job as an outside sales employee as I choose.

19.  As an Account Executive, I am paid through commissions as set forth in my union contract.

20.  When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

21.  The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

22.  The interview took about 20 minutes.

23.  During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

24.  I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

茲證明上述聲明已為我從英語翻譯成普通話,我的母語, 而本宣言所載的資料是真實和準確的。

This 13th day of March, 2015

Ying Sum Lau          5/13/2015

4

## TRANSLATOR DECLARATION

I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Ying Sum Lau from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 13, 2015

_____
Signature

_Arthur Kwok_
Printed name

4825-0600-9122, v. 2

5

# EXHIBIT 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                     Plaintiff,

        -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                 Defendant

---------------------------------------------------------------X

Civ. No.:  14 cv 5655
(MKB)(RML)

### DECLARATION OF NATHAN ZHENG

1.    I, Nathan Zheng, am competent to testify to the matters contained in this Declaration. This Declaration is based upon my personal knowledge and is under oath.

2.    I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.    I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.    The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct.  I should not, and am not, speculating or making statements based upon rumor.  I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else.  I was asked to just state the truth.

5.    I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.    I have not been coerced or pressured in any way to sign this document.  I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7. I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8. I have been employed by the World Journal as an Account Executive and Business Reporter since September 2013. Prior to that, I worked as a sales person at Star Nissan in Bayside, Queens.

9. My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers. A customer is any business that advertises in the World Journal. Types of advertisements for sale include display ads, advertorials, and pre-print inserts. We also have digital media channels such as the online edition or social media.

10. When I meet with or talk to existing or prospective clients, I discuss and identify their advertising needs with them. Based on those needs, I recommend different advertising strategies, campaigns, and budgets to the clients, and allow them the opportunity to provide me with any feedback regarding my recommendations. If the clients are interested in any of the Company's products, I assist in helping make a final product decision and suggest next steps. When I make a proposal to a potential new customer, I consider the nature of their business and how to target their advertising. For example, if their clientele is more likely to read the World Journal Sunday Magazine, which focuses on leisure issues such as travel and technology, I will recommend that.

11. My performance is evaluated based on advertising purchased by my clients, new and existing. It is my job to sell advertising and collect funds.

12.   My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to expand their advertising with us to new channels. I assist them with creation of their advertisements propose new or modified advertising and respond to their questions. All of this activity is done to drive sales, meaning to retain their business by having them continue to order advertising services, and if possible expand it.

13.   With respect to new clients, I explain to them the benefits of advertising with World Journal and attempt to get them to purchase those services.

14.   To maximize sales, I work outside the office to meet with existing or prospective clients, and to search for new clients to sell advertising space for one of the Company's publications. I do this by walking around in the Chinatown communities in Flushing (Queens) and Sunset Park (Brooklyn). If I see a new business which does not advertise with us, I will stop in. I try to schedule appointments with business owners early in the day or right after lunch, when they are more likely to be available and receptive.

15.   I am also responsible for reviewing our competition to see who is advertising with them, not us.

16.   I also visit clients to keep in regular contact to maintain good business relationships and to ensure satisfaction with the advertising products offered by the Company.

17.   During an average week, I am out in the field about three hours a day, whether to network and develop new clients, meet with an existing client regarding their advertising or collect payment. I treat all of these calls as opportunities to retain and develop business. Much of my time in the office is spent researching or preparing materials

3

which relate to these sales efforts, and also responding to inquiries and dealing with client issues. We also handle some client billing issues not handled by the accounting department.

18. Even when I am not meeting with clients in-person, I am responsible for developing and maintaining strong relationships with existing clients. For that reason, I regularly email or call existing clients to measure satisfaction with the Company's product, to confirm that the Company's product matches their needs, to identify what, if anything, the Company can do to deliver a product that meets those needs and to schedule meetings.

19. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone.

20. As an Account Executive, I am paid through commissions as set forth in my union contract.

21. When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

22. The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

23. The interview took about 30 minutes.

24. During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

25. I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

4

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

茲證明上述聲明已為我從英語翻譯成普通話,我的母語,而本宣言所載的資料是真實和準確的。

This 27th day of March, 2015

_____
Nathan Zheng

## TRANSLATOR DECLARATION

        I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Nathan Zheng from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

        I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 27, 2015

_____
Signature

_____
Printed name

_____
Address

_____
City, State, Zip Code

_____
Telephone number

4825-0600-9122, v. 2

6

# EXHIBIT 8

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff*
*and Class members,*

Plaintiff,

-against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

Defendant

--------------------------------------------------------X

Civ. No.: 14 cv 5655
(MKB)(RML)

## DECLARATION OF LILIAN YANG

1.  I, Lilian Yang, am competent to testify to the matters contained in this Declaration.  This Declaration is based upon my personal knowledge and is under oath.

2.  I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.  I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.  The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct.  I should not, and am not, speculating or making statements based upon rumor.  I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else.  I was asked to just state the truth.

5.  I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.  I have not been coerced or pressured in any way to sign this document.  I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7. I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8. I have been employed by the World Journal as an Account Executive since 1998.

9. My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers. A customer is any business that advertises in the World Journal. Types of advertisements for sale include display ads, advertorials, and pre-print inserts. We also have digital media channels such as the online edition or social media.

10. When I meet with or talk to existing or prospective clients, I discuss and identify their advertising needs with them. Based on those needs, I recommend different advertising strategies, campaigns, and budgets to the clients, and allow them the opportunity to provide me with any feedback regarding my recommendations

11. My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to expand their advertising with us to new channels. I assist them with creation of their advertisements, propose new or modified advertising and respond to their questions. I work with the advertising department to make sure they are satisfied. All of this activity is done to drive sales, meaning to retain their business by having them continue to order advertising services and renew their contract, and if possible expand it.

12. With respect to new clients, I explain to them the benefits of advertising with World Journal and attempt to get them to purchase those services. Sometimes, new clients come to me through referral from existing clients. I am also constantly walking around trying to identify potential clients. For example, if I see that a store is under construction, and it is clear that it will be a store advertising to the Chinese community, I will do research to determine what type of business it will be and who the right person to speak to is. I will then try to set up an in-person meeting with that person to discuss advertising with the World Journal.

13. To maximize sales, I work outside the office to meet with existing or prospective clients. I am out of the office every day meeting with clients to maintain relationships, meet with them regarding their needs, and sometimes to collect money. I spend more than half my time out of the office. Normally, this means traveling to the Chinese-American communities in the New York City area, but sometimes farther. When a client of mine opened a new store in Massachusetts, I traveled to Massachusetts for the grand opening.

14. I treat all such calls as opportunities to retain and develop business. Much of my time in the office is spent researching or preparing materials which relate to these sales efforts, and also responding to inquiries and dealing with client issues. We also handle some client billing issues not handled by the accounting department.

15. My performance is evaluated based on advertising purchased by my clients, new and existing. It is my job to sell advertising and collect funds.

16. Even when I am not meeting with clients in-person, I am responsible for developing and maintaining strong relationships with existing clients. For that reason, I regularly email or call existing clients to measure satisfaction with the Company's product, to confirm

3

that the Company's product matches their needs, to identify what, if anything, the Company can do to deliver a product that meets those needs and to schedule meetings.

17. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone.

18. As an Account Executive, I am paid through commissions as set forth in my union contract.

19. When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

20. The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

21. The interview took about 30 minutes.

22. During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

23. I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

兹證明上述聲明已為我從英語翻譯成普通話,我的母語， 而本宣言所載的資料是真實和準確的。

This 27th day of March, 2015

_Lilian Yang_

4

## TRANSLATOR DECLARATION

I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Lilian Yang from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 27, 2015

_____
Signature

_____
Printed name

4825-0600-9122, v. 2

5

# EXHIBIT 9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                          Plaintiff,

      -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                        Defendant

------------------------------------------------------------X

Civ. No.: 14 cv 5655
(MKB)(RML)

## DECLARATION OF MI WU

1.    I, Mi Wu, am competent to testify to the matters contained in this Declaration.  This Declaration is based upon my personal knowledge and is under oath.

2.    I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.    I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.    The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct.  I should not, and am not, speculating or making statements based upon rumor.  I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else.  I was asked to just state the truth.

5.    I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.    I have not been coerced or pressured in any way to sign this document.  I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7.    I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8.    I have been employed by the World Journal as an Account Executive since 1995.

9.    My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers.  A customer is any business that advertises in the World Journal.  Types of advertisements for sale include display ads, advertorials, and pre-print inserts.  We also have digital media channels such as the online edition or social media.

10.   My performance is evaluated based on advertising purchased by my clients, new and existing.  It is my job to sell advertising and collect funds.

11.   My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications.  With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services.  I try to encourage them to expand their advertising with us to new channels.  I assist them with creation of their advertisements, propose new or modified advertising and respond to their questions.  I work with the advertising department to make sure they are satisfied.  If the clients are interested in any of the Company's products, I assist in helping make a final product decision and suggest next steps.   Some clients are like sponges -- they accept my recommendations regarding their advertising needs.  Others are much more difficult or involved.  No matter the case, my goal is the same: to retain their business and expand it if possible.

2

12. With respect to new clients, I explain to them the benefits of advertising with World Journal and attempt to get them to purchase those services. Some new clients come to me through referrals from existing clients. I also frequently drop in to new businesses that may be interested in advertising in a Chinese-language publication. I do this in the Chinatown communities of Flushing, Manhattan and Brooklyn. From time to time I will do it in New Jersey. Any new business is a potential client, and I do not confine myself to Chinese businesses. I will drop in on a new Korean business if I believe there is a possibility they will want to advertise in World Journal.

13. As discussed above, to maximize sales, I work outside the office to meet with existing or prospective clients. I am out of the office every day meeting with clients to maintain relationships, meet with them regarding their needs, and sometimes to collect money. I probably spend half my work time in the office and half outside. I treat all of these calls as opportunities to retain and develop business. Much of my time in the office is spent researching or preparing materials which relate to these sales efforts, and also responding to inquiries and dealing with client issues. We also handle some client billing issues not handled by the accounting department.

14. Even when I am not meeting with clients in-person, I am responsible for developing and maintaining strong relationships with existing clients. For that reason, I regularly email or call existing clients to measure satisfaction with the Company's product, to confirm that the Company's product matches their needs, to identify what, if anything, the Company can do to deliver a product that meets those needs and to schedule meetings.

15. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone.

3

16. As an Account Executive, I am paid through commissions as set forth in my union contract.

17. When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

18. The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

19. The interview took about 30 minutes.

20. During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

21. I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

茲證明上述聲明已為我從英語翻譯成普通話,我的母語, 而本宣言所載的資料是真實和準確的。

This 27ᵗʰ day of March, 2015

Mi Wu

4

## TRANSLATOR DECLARATION

I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Mi Wu from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 27, 2015

_____
Signature

_____
Printed name

4825-0600-9122, v. 2

5

# EXHIBIT 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                               Plaintiff,

          -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                            Defendant

-------------------------------------------------------------X

Civ. No.: 14 cv 5655
(MKB)(RML)

### DECLARATION OF MONIQUE LIN

1.    I, Monique Lin, am competent to testify to the matters contained in this Declaration. This Declaration is based upon my personal knowledge and is under oath.

2.    I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.    I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.    The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct. I should not, and am not, speculating or making statements based upon rumor. I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else. I was asked to just state the truth.

5.    I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.    I have not been coerced or pressured in any way to sign this document. I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7. I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8. I have been employed by the World Journal as an Account Executive and Business Reporter since approximately September 2013. Before that I worked as a tour guide.

9. My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers. A customer is any business that advertises in the World Journal. Types of advertisements for sale include display ads, advertorials, and pre-print inserts. We also have digital media channels such as the online edition or social media.

10. When I meet with or talk to existing or prospective clients, I discuss and identify their advertising needs with them. Based on those needs, I recommend different advertising strategies, campaigns, and budgets to the clients, and allow them the opportunity to provide me with any feedback regarding my recommendations. If the clients are interested in any of the Company's products, I assist in helping make a final product decision and suggest next steps. For example, a restaurant client may open a new location and we will need to incorporate that into their advertising. I will encourage them to expand their advertising budget and consider what the best placement for advertising regarding the new business would be.

11. My performance is evaluated based on advertising purchased by my clients, new and existing. It is my job to sell advertising and collect funds.

12. My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With

2

respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to expand their advertising with us to new channels. I assist them with creation of their advertisements, propose new or modified advertising and respond to their questions. I work with the advertising department to make sure they are satisfied. All of this activity is done to drive sales, meaning to retain their business by having them continue to order advertising services and renew their contract, and if possible expand it.

13. With respect to new clients, I explain to them the benefits of advertising with World Journal and attempt to get them to purchase those services. New clients come to me through referral from existing clients. Also, there is a rotation where "inbound" inquiries through the phone or internet are routed to Account Executives to pursue sales opportunities.

14. To maximize sales, I work outside the office to meet with existing or prospective clients. I am out of the office every day meeting with clients to maintain relationships, meet with them regarding their needs, and sometimes to collect money. Every few weeks this requires me to go to New Jersey, but more commonly I am traveling to the Chinese-American communities in Flushing or Manhattan. I treat all of these calls as opportunities to retain and develop business. Much of my time in the office is spent researching or preparing materials which relate to these sales efforts, and also responding to inquiries and dealing with client issues. We also handle some client billing issues not handled by the accounting department.

15. Even when I am not meeting with clients in-person, I am responsible for developing and maintaining strong relationships with existing clients. For that reason, I regularly email or call existing clients to measure satisfaction with the Company's product, to confirm

3

that the Company's product matches their needs, to identify what, if anything, the Company can do to deliver a product that meets those needs and to schedule meetings.

16. During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone.

17. As an Account Executive, I am paid through commissions as set forth in my union contract.

18. When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

19. The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

20. The interview took about 30 minutes.

21. During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

22. I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

4

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

兹證明上述聲明已為我從英語翻譯成普通話,我的母語，而本宣言所載的資料是真實和準確的。

This 27th day of March, 2015

_____
Monique Lin

5

## **TRANSLATOR DECLARATION**

I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Monique Lin from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.


Date:   March 27, 2015

_____
Signature

_____
Printed name

4825-0600-9122, v. 2

6

# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

CHIA HAO LIN,
*on behalf of himself, FLSA Collective Plaintiff
and Class members,*

                                        Plaintiff,           Civ. No.: 14 cv 5655
                                                       (MKB)(RML)

        -against-

WORLD JOURNAL, LLC., and JOHN DOE
CORPORATION,

                            Defendant

------------------------------------------------------------X

## DECLARATION OF SANDRA LEE

1.    I, Sandra Lee, am competent to testify to the matters contained in this Declaration.  This Declaration is based upon my personal knowledge and is under oath.

2.    I understand that the lawyer who interviewed me and prepared this Statement for me represents World Journal, LLC and does not represent me or my personal interests.

3.    I make this Declaration voluntarily, based upon information that I personally know to be accurate.

4.    The law firm of Jackson Lewis P.C., attorneys for World Journal, LLC, informed me that I should not speculate, assume or provide information which is not completely correct.  I should not, and am not, speculating or making statements based upon rumor.  I have been told not to make any statement with the intention of being helpful or hurtful to World Journal, LLC, or to anyone else.  I was asked to just state the truth.

5.    I also have been informed that if I am not comfortable answering certain questions or providing this Declaration, I need not do so.

6.    I have not been coerced or pressured in any way to sign this document.  I have neither been promised a benefit nor threatened in any way to sign or not to sign this Declaration.

7.  I have been advised that I have an obligation to retain, and not discard, any documents that I may possess reflecting my job duties as an Account Executive for World Journal, where and when I have performed my duties as an Account Executive, work time or any other Company documents or my own records.

8.  I have been employed by the World Journal as an Account Executive and Business Reporter for more than 30 years, since 1984. Before taking this job I worked as a jewelry sales person in Manhattan.

9.  My goal as an Account Executive is to sell as much advertising as I can for World Journal, both to new and existing customers. A customer is any business that advertises in the World Journal. Types of advertisements for sale include display ads, advertorials, and pre-print inserts. We also have digital media channels such as the online edition or social media.

10. When I meet with or talk to existing or prospective clients, I discuss and identify their advertising needs with them. Based on those needs, I recommend different advertising strategies, campaigns, and budgets to the clients, and allow them the opportunity to provide me with any feedback regarding my recommendations. If the clients are interested in any of the Company's products, I assist in helping make a final product decision and suggest next steps.

11. My performance is evaluated based on advertising purchased by my clients, new and existing. It is my job to sell advertising and collect funds.

12. My primary duty as an Account Executive is to meet with existing and prospective clients to develop and maintain advertising sales for the World Journal's publications. With respect to existing clients (i.e., current advertisers), I make sure they are pleased with their advertisements and with World Journal's services. I try to encourage them to

2

expand their advertising with us to new channels. I assist them with creation of their advertisements propose new or modified advertising and respond to their questions. All of this activity is done to drive sales, meaning to retain their business by having them continue to order advertising services, and if possible expand it.

13. With respect to new clients, I explain to them the benefits of advertising with World Journal and attempt to get them to purchase those services. Because I have been with World Journal for so long, I have many long terms clients. Servicing them, and retaining and growing our business with them, is my primary focus. I do not have as much time as I would like to cultivate new clients.

14. Long term clients require constant attention to ensure we retain their business. I speak to them, write article for and about them, and work on their ads. All of this is done to retain their existing advertising and, if possible, convince them to expand to other channels such as magazines, supplements or the Internet.

15. To maximize sales, I work outside the office to meet with existing or prospective clients. I spend approximately 2-3 hours per day in the field meeting with clients to maintain relationships, meet with them regarding their needs, and sometimes to collect money. I treat all of these calls as opportunities to retain and develop business. Much of my time in the office is spent researching or preparing materials which relate to these sales efforts, and also responding to inquiries and dealing with client issues. We also handle some client billing issues not handled by the accounting department.

16. Even when I am not meeting with clients in-person, I am responsible for developing and maintaining strong relationships with existing clients. For that reason, I regularly email or call existing clients to measure satisfaction with the Company's product, to confirm

3

that the Company's product matches their needs, to identify what, if anything, the Company can do to deliver a product that meets those needs and to schedule meetings.

17.   During the period for which I have worked as an Account Executive at the World Journal, I typically recorded the beginning and end of my work day using the biometric scanner located at the World Journal office in Whitestone.

18.   As an Account Executive, I am paid through commissions as set forth in my union contract.  I am also eligible for further incentive compensation if I meet certain sales goals.

19.   When I was hired, I understood the nature of the position, and that my sales directly affect the amount of my compensation.

20.   The contents of this declaration were discussed with me in my native language (Mandarin Chinese) by a certified interpreter, Arthur Kwok.

21.   The interview took about 30 minutes.

22.   During the interview, I did not have questions about the interview, the information contained in this declaration, or any other aspect of the litigation.

23.   I declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct and based upon my personal knowledge.

4

I hereby certify that the foregoing Declaration has been translated for me from English into Mandarin Chinese, my native language, and that the information contained in this Declaration is true and accurate.

茲證明上述聲明已為我從英語翻譯成普通話,我的母語, 而本宣言所載的資料是真實和準確的。

This 27th day of March, 2015

*Sandra Lee*

Sandra Lee

## TRANSLATOR DECLARATION

       I, Arthur Kwok, hereby declare that I am fluent in both Mandarin Chinese and English. I have verbally translated the attached Declaration for Sandra Lee from English to Mandarin Chinese. To the best of my skills and ability, the attached document is a true, accurate and complete translation thereof. I have not willfully added or omitted any terminology nor have I added my personal opinion in this document. I have translated the attached document in accordance with all applicable rules and ethics.

       I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Date:   March 27, 2015

_____
Signature

_____
Printed name

4825-0600-9122, v. 2

6

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2015, **DECLARATION OF NOEL P. TRIPP IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA** was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Eastern District's Local Rules, and the Eastern District's Rules on Electronic Service upon the following parties and participants:

C.K. LEE, ESQ.
LEE LITIGATION GROUP, PLLC
*ATTORNEYS FOR PLAINTIFF*
30 East 39th Street, 2nd Fl.
New York, New York  10016

NOEL P. TRIPP, ESQ.

4821-1943-9394, v.  1